IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA HOSKINS,                           )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )        Case No.   20-cv-1068-RJD
                                          )
ALEXANDER RODMAN, et al.,                 )
                                          )
        Defendants.                       )

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Joshua Hoskins, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville").   In his complaint, Plaintiff alleges from August 7 through October 9, 2020, defendants threatened to place him in segregation on false disciplinary charges to prevent him from being transferred to Dixon Correctional Center if he did not refuse his psychotropic medications and telepsychology appointments.   Plaintiff further alleges he was assaulted by Defendant Cacioppo on August 21, 2020.

Plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and he proceeds in this action on the following claims:

Count 1:        First Amendment retaliation claim against all Defendants.

Count 2:        Eighth Amendment excessive force claim against Defendant Cacioppo.

Count 3:        Eighth Amended deliberate indifference to a serious medical condition against all Defendants.

Page **1** of **14**

As to Counts 1 and 3, the following individuals are named as defendants: Alexander Rodman, Joseph Dudek, Lt. Shirley, Sgt. Peek, C/O Michael Bailey, C/O Lueker, C/O Tomshack, C/O Bell, Lt. Wall, Lt. Wangler, C/O Vandekeekhove, C/O Hale, C/O Hagston, Lt. Baker, C/O Swisher, Sgt. Grove, C/O Hankins, Sgt. Bryant, Major Lively, Sgt. Porter, Don Wanack, C/O Schlott, C/O Jurkowski, Lt. Petitjean, Lt. Johnson, C/O Hermann, Sgt. Oleary, C/O Brock, Sgt. Bartolotti, C/O Mays, C/O Cacioppo, Nurse Jana Rueter, and C/O Summers.   Of these 33 defendants, 32 are employed by the IDOC, and one, Jana Rueter, is employed by Wexford Health Sources, Inc., a private company that provides healthcare to inmates of the IDOC.

Defendant Rueter and the IDOC Defendants filed motions for summary judgment arguing Plaintiff failed to exhaust his administrative remedies prior to filing suit (Docs. 48 and 52). Plaintiff filed a timely response (Doc. 56).   A hearing was held pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on Defendants' Motions for Summary Judgment on August 29, 2022.

### Factual Background

Plaintiff's complaint details events that allegedly occurred between August 7 through October 9, 2020.   Plaintiff specifically recounts events he contends occurred on August 10, August 17, August 21, September 12, and September 21, 2020.

It is undisputed that there are four grievances in the record that were submitted by Plaintiff during this time.   Two grievances, both dated August 21, 2020, lodged complaints against mental health professionals.   The first of these grievances was submitted as an emergency grievance and was designated as grievance number 2045-08-02 (Doc. 49-2 at 5-9).   In this grievance, Plaintiff indicates he had a mental health crisis on July 5, 2020 that was brought to the attention of MHP Rushing.   Plaintiff contends he saw Rushing enter the cellhouse, sign the logbook, and then leave without seeing him or any other offender.   This grievance was expedited as an emergency by the

Chief Administrative Officer ("CAO") on August 25, 2020. The Grievance Officer recommended the grievance be denied on September 15, 2020. The CAO concurred with the Grievance Officer on October 1, 2020. The ARB received this grievance on October 13, 2020, and found it was appropriately addressed by the facility on February 17, 2021.

Plaintiff's other grievance dated August 21, 2020, designated as grievance number 2057-08-20 (Doc. 49-2 at 1-4), indicated that MHP Stutz was informed by Lt. Kosina that Plaintiff was dealing with a crisis and wanted to speak with Stutz. Stutz told Kosina she would not speak to Plaintiff. Plaintiff also complains that Amanda Boeing from mental health was falsifying information in his mental health records.

Plaintiff's counselor (Tyler King) responded to this grievance on August 31, 2020, indicating that Plaintiff failed to provide a date when the grievance occurred. The Grievance Officer subsequently recommended this grievance be denied on September 8, 2020. The CAO concurred with the Grievance Officer on September 9, 2020. The ARB received this grievance on September 18, 2020, and found it was appropriately addressed by the facility on March 5, 2021.

Plaintiff does not rely on these grievances to establish that he exhausted his administrative remedies against Defendants in this case. Defendants, however, point to these grievances as evidence that Plaintiff knew, and was able, to exhaust administrative remedies during the time relevant to the claims now before the Court. Plaintiff rejects this contention, asserting both in his brief and during his testimony at the hearing that he was unable to exhaust grievances related to the claims in this lawsuit because they were not processed or they were destroyed. More specifically, Plaintiff testified he filed grievances that named the specific staff members involved and identified the dates on which incidents occurred each time an incident underlying his complaint occurred. Plaintiff testified these grievances were filed on the date of occurrence or, if he did not have a

grievance form, he would take notes and write the grievance as soon as a form was available. Plaintiff testified he did not keep any notes concerning grievances during the time relevant to this case.

According to Plaintiff's testimony, prior to filing this lawsuit, counselors Tyler King, Jesse Reid, and Shawn Brown told Plaintiff they would not process grievances that would get a staff member fired, suspended, or sued.   Plaintiff testified that despite these advisements, he continued to place grievances in the grievance box for review.

Plaintiff provided more detail regarding his purported submission of grievances related to this lawsuit in his response brief.   In his brief, he asserted that after he submitted a grievance, if he did not receive a receipt within 24 hours per institutional policy, he would resubmit that grievance. If he again did not receive any receipt for that grievance, Plaintiff asserted he would submit another grievance, which Plaintiff explains acted as a "request slip" to inquire as to the status or whereabouts of his initial grievance.   Plaintiff points to grievances in the record dated September 8 and October 5, 2020 to support this argument.   These two grievances are the only other grievances (aside from the grievances dated August 21, 2020 discussed above) that are in the record and were submitted during the time giving rise to the claims in this lawsuit.

In the first of these grievances, dated September 8, 2020 (Doc. 49-6 at 3-4), Plaintiff writes that he placed grievances in the grievance box on August 22, 2020, and only received some back. Plaintiff names various staff members, including some defendants, as impeding Plaintiff in receiving grievances back.   Plaintiff writes that while he was housed in R2 house he has filed grievances against staff members (who are defendants in this case) for interfering with Plaintiff seeing a psychiatrist out of retaliation.   Plaintiff writes that these grievances were placed in R4 and R2 cellhouse grievances boxes in August 2020, but he never received grievance receipts or

numbers and did not receive these grievances back.   Counselor Brown responded to this grievance on September 9, 2020, indicating that per the Grievance Officer the only grievance pending concerned Plaintiff's mental health.   There is no further documentation concerning this grievance.

The second grievance in the record that Plaintiff describes as a "request slip" was dated October 5, 2020 (Doc. 49-6 at 1-2).   Plaintiff writes that he filed grievances by giving them to counselor Reid and placing them in the cellhouse grievance box.   These filed grievances related to security staff telling Plaintiff that he needed to refuse his telepsychology appointments and psychiatric medications. Plaintiff asserts these individuals (who are defendants) acted out of retaliation. In this grievance, Plaintiff claims he has not received his grievance receipt numbers or his grievances back.   Counselor Hallman responded to this grievance on November 4, 2020. There is no further documentation concerning this grievance.

In his response brief, Plaintiff asserts that after he received a counselor response to these "request slip" grievances, he would again re-write and re-submit his grievance.   When he again did not receive a receipt for his third attempted submission of his grievance, he knew his grievances would not be processed and he asserts he had no choice but file his lawsuit.   Plaintiff testified that he would have waited 60 days to file this lawsuit if he had received a receipt following submission of his grievances.

Plaintiff, when questioned about his ability to exhaust the August 21, 2020 grievances, testified that these grievances would not get a staff member sued, suspended, or fired and, therefore, they were processed and he was able to exhaust his administrative remedies.   Plaintiff also testified that counselors responded to his September 8 and October 5 grievances because he was only complaining about the grievance process and his complaints would not affect staff.

Also in the record before the Court is Plaintiff's Cumulative Counseling Summary (*see* Doc. 53-1). As mentioned in Defendant Rueter's brief, an entry dated December 30, 2020 by Counselor Micah Hallman states: "Offender wanted to know why I was throwing his grievances away. I assured the offender that all grievances are processed according to policy and procedure. Offender than explained to me that he knew I was not throwing his grievances away but he wanted to make it look like I was for his lawsuit." (Doc. 53-1 at 13). In his response brief, Plaintiff asserts Counselor Hallman told him (Plaintiff) that he did not need to continue filing grievances and Hallman could address issues with staff members if Plaintiff spoke to Hallman directly. Plaintiff also asserts Hallman told Plaintiff he knew how to falsify Plaintiff's CHAMPS (Cumulative Counseling Summary) entries to "get out of any lawsuits filed by the plaintiff" (Doc. 56 at 12).

Hallman also testified at the hearing, explaining that persons in custody file grievances by placing a grievance form in a lockbox located in the front of every wing in general population. Hallman testified that counselors collect grievances from these lockboxes, and he would collect grievances from the housing unit to which he was assigned. Hallman would collect the grievances from the lockbox in his assigned housing unit every day he was at work except for a "few days" when he was busy with another assignment and the other counselor assigned to the housing unit would pick up the grievances for Hallman. Counselors and Grievance Officers would try to respond to grievances within 30 days. In September and October 2020, Hallman was assigned to Plaintiff's housing unit, R3 cellhouse[1]. Hallman testified that he remembers reviewing grievances filed by Plaintiff and responded to dozens of such grievances. Hallman

---

[1] Based on a review of Plaintiff's Cumulative Counseling Summary, it appears Plaintiff was also housed in R2 cellhouse during at least a part of September 2020.

testified he never purposely failed to respond or destroyed any grievances filed by Plaintiff. Hallman was also never asked by any counselor or Grievance Officer to not respond to Plaintiff's grievances.

Hallman recalled that Plaintiff had submitted a grievance against him, but another counselor, not Hallman, would respond to that grievance to avoid a conflict.   Hallman indicated he may be familiar with some of the named defendants in this case.   Hallman testified he does not know how long it will take for a receipt to be issued after a grievance is received by the facility.

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.   *Celotex*, 477 U.S. at 323.   Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).   A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).   In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Exhaustion Requirements*

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance within 60 days after the discovery of the incident, occurrence or problem, to his or her institutional counselor, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and

(e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

## Discussion

Administrative exhaustion is a prerequisite to suit and, as such, factual disputes about exhaustion need not reach a jury, and a *Pavey* hearing permits trial judges to resolve credibility contests, weigh evidence, and adjudicate the exhaustion defense. *Waldrop v. Marshall*, 854 F. App'x 756 (7th Cir. 2021). Also, as the party asserting the exhaustion defense, Defendants bear the burden of establishing that the administrative remedies upon which they rely were available to Plaintiff. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Plaintiff does not rely on any grievances in the record to establish exhaustion; rather, he asserts he was thwarted in his efforts to exhaust relevant grievances because counselors at Pinckneyville refused to process the same. Because he never received these grievances back from the counselor, Plaintiff asserts he is unable to submit them to the Court for review. Based on his argument, in order to find Plaintiff exhausted his administrative remedies, the Court must credit Plaintiff's testimony concerning his efforts to submit grievances that were not processed. The Court, however, finds Plaintiff's testimony to be disingenuous.

It is undisputed that a counselor responded to four grievances that are now in the record before the Court during the time when the allegations at issue in this lawsuit occurred — August 7 through October 9, 2020.   Plaintiff testified the two grievances that were fully exhausted, both dated August 21, 2020, were processed only because the allegations Plaintiff made would not get a staff member "sued, suspended, or fired."   This reasoning is illogical.   Plaintiff's requested relief for both of these grievances includes having the named mental health professional placed on investigative status until the grievances were "fully investigated".   Based on the requested relief and nature of the complaints, the Court finds Plaintiff's theory that these grievances received a response because they would not get a staff member sued, suspended, or fired unconvincing.

Plaintiff's counselors, Micah Hallman and Shawn Brown, also responded to grievances dated October 5 and September 8, 2020, respectively.   Plaintiff's attempt to explain why counselors responded to these grievances as opposed to others is again illogical.   These grievances assert that previous grievances lodged against various staff members, including many defendants in this action, had not received a response.   These grievances also set forth various substantive complaints, including complaints that certain staff member "intentionally interfered" with Plaintiff speaking to a tele-psychiatrist out of retaliation.   In his response brief, Plaintiff characterized these grievances as "request slips," but there is nothing to differentiate these grievances from any other grievance in the record.   Thus, it is inexplicable why Hallman and Brown would have responded to these grievances if Plaintiff's testimony that there was a coordinated effort by the counselors at Pinckneyville to destroy or ignore grievances that could get a staff member "sued, suspended, or fired" was true.

Plaintiff was also clear in his response brief that he submitted grievances concerning the events in this lawsuit three times.   According to Plaintiff, he would place his grievances in the

Page **10** of **14**

grievance box for review.   If he did not receive a receipt by the following day, he would place another grievance in the box.   If he again did not receive a receipt, he would file a "request slip" grievance, such as the September 8 and October 5, 2020 grievances.   Once he received a response to his "request slip" grievance, he would again submit a grievance on that issue and wait for a reply.   If he did not receive any receipt on his third attempt, he believed his attempts to exhaust would be futile.   At the hearing, Plaintiff was clear he submitted separate grievances for each event identified in this lawsuit.   Based on a review of the complaint, separate and distinct events allegedly occurred on August 10, August 17, August 21, September 12, and September 21, 2020 (and many allegations span more general periods of time, such as from "8/27/20-9/12/20" or "8/7/20-10/9/20", when it is unclear when a grievance would have been filed).   Thus, based on Plaintiff's testimony and statements made in his response brief, he would have filed at least 15 grievances (a low-end estimate) related to the allegations in his complaint (excluding what Plaintiff characterizes as "request slips").

During the relevant time, counselors Tyler King, Chalene Hale, Shawn Brown, and Micah Hallman, and Office Coordinator Diane Skorch authored entries in Plaintiff's Cumulative Counseling Summary concerning grievances (*see* Doc. 53-1).   Plaintiff testified he has no evidence Hallman was destroying grievances and Plaintiff has never made any mention of Chalene Hale or Diane Skorch taking any action with his grievances, nefarious or otherwise.   Thus, Plaintiff would like the Court to believe that King, Brown, and Reid acted in coordination with a number of other individuals (who apparently had no motive) to destroy or otherwise ignore more than a dozen grievances.   It is simply implausible and belies reason.   More than that, there is evidence in the record to contradict such a coordinated conspiracy, which makes Plaintiff's testimony not creditable.

First, and most obviously, are the grievances in the record discussed above that were handled and addressed at the institutional level.   Although Plaintiff attempts to carve exceptions around the purpose of the conspiracy, the fact that grievances complaining about staff conduct were reviewed at the relevant time provides irrefutable evidence that undercuts Plaintiff's testimony.

Further, Counselor Hallman testified at the hearing and denied destroying or having any involvement in destroying or ignoring grievances filed by Plaintiff.   The Court credits this testimony as it is consistent with the record wherein Hallman clearly responded to grievances filed by Plaintiff.   Moreover, Hallman also made notations in Plaintiff's Cumulative Counseling Summary that seriously undermine Plaintiff's narrative.   First, in an entry dated December 30, 2020, Hallman indicated Plaintiff was seen at his cell and writes: "Offender wanted to know why I was throwing his grievances away.   I assured the offender that all grievances are processed according to policy and procedure. Offender then explained to me that he knew I was not throwing his grievances away but he wanted to make it look like I was for his lawsuit" (Doc. 53-1 at 13).   In another entry dated January 14, 2021, Hallman writes: "Offender told me to throw his grievances away. I advised him that any and all grievances he places in the grievance box will be processed according to policy and procedure" (Doc. 53-1 at 12).

In his response brief, Plaintiff attempts to explain these entries by asserting Hallman told him (Plaintiff) that Hallman knew he was an inmate who filed lawsuits and Hallman knew how to falsify his Cumulative Counseling Summary notes to get out of any lawsuits Plaintiff files. Notably, Plaintiff has not filed a lawsuit against Hallman.   Thus, it is entirely unclear why Hallman would make such an effort to "get out of a lawsuit" that does not exist.   Moreover, the issue of exhaustion had not arisen at the time these entries were made; thus, the Court has difficulty

ascribing the motive asserted by Plaintiff to Hallman's entries.

This Court has considered Hallman's testimony and his Cumulative Counseling Summary entries on two other occasions (20-cv-560 and 20-cv-1377) and determined, as it does again now, that the only logical conclusion with regard to the entries is that Plaintiff was attempting to give some credibility to his claim that certain counselors intercepted and destroyed certain grievances. Despite Plaintiff's efforts, the Court is not convinced.

In weighing the evidence before it as it may properly do on the question of administrative exhaustion, the Court finds Plaintiff's assertions regarding his ability to exhaust his administrative remedies not credible.   The Court further finds Plaintiff had administrative remedies available at all relevant times, but failed to exhaust the same as to any claims or defendants in this lawsuit.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Jana Rueter (Doc. 52), and the Motion for Summary Judgment on the Issue of Exhaustion filed by Michael Bailey, Michael Bartolotti, Philip Baker, Mark Bell, David Brock, Justin Bryant, Amy Cacioppo, Joseph Dudek, James Groves, Austin Hagston, Garrick Hale, Jared Hankins, Derek Hermann, Matthew Johnson, Justin Jurkowski, Kale Lively, Brandon Lueker, Anthony Mays, Robert O'Leary, Patrick Peek, Scott Petitjean, Dalton Porter, Alexander Rodman, Todd Schlott, Wesley Shirley, Max Summers, Charles Swisher, Robert Tomshack, Treg Vandekerkhove, Chad Wall, Donald Wanack, and Eric Wangler (Doc. 48) are **GRANTED**.   This matter is **DISMISSED WITHOUT PREJUDICE**.   The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 16, 2022**

Page **13** of **14**

_s/_  *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**